We will hear argument next in case 2437 United States v. Palomar-Santiago. Ms. Ross. Mr. Chief Justice, and may it please the Court, Detective Section 13-2060 resolves the question presented in this case. In a provision entitled Limitation on Collateral Attack on Underlying Deportation Order, Congress stated that a non-citizen may not challenge the validity of his removal order unless he demonstrates that he exhausted any available administrative remedies, that the removal proceedings improperly deprived him of the right to judicial review, and that the entry of the order was fundamentally unfair. Those three expressed mandatory and conjunctive requirements reflect Congress's sensible determination that non-citizens should challenge their removal orders in their removal proceedings using the well-established statutory and regulatory procedures that exist for that very purpose. Congress reasonably prohibited non-citizens from taking the law into their own hands by simply re-entering the country and then challenging a prior removal order only if indicted for unlawful re-entry. At the same time, consistent with this Court's decision in Mendoza-Lopez, Section 13-2060 provides a narrow escape hatch for the rare case in which no prior opportunity for review was available, resulting in fundamental unfairness. Respondent's case does not fall within that narrow class, and his arguments would create a significant loophole in the statute. Respondent plainly could have brought to the BIA, the Court of Appeals, and if necessary, this Court, the argument that his prior offense was not an aggravated felony, just as others later did. And even after this Court's decision in Leocal, Respondent could have sought to reopen his removal order or to obtain the Attorney General's permission to reapply for admission. What Respondent could not do was simply re-enter the country and then claim immunity from this Court should enforce the statute as Congress wrote it and reverse. I welcome the Court's questions. Counsel, I want to make sure I understand the government's position correctly. Are there any removal orders that are subject to collateral attack if the alien cannot establish the three requirements of Subsection D? Mr. Chief Justice, I don't think so. I mean, we haven't had to take a position on that in this case because I think the parties, for the most part, agree that 1326B governs. Of course, Respondent has an argument about the idea that he's not challenging the validity at all. We think that's incorrect. But I think Congress meant to limit the collateral attack as it plainly expressed in 1326B. So in a case in which an alien waives or forfeits the right to appeal, there's no way for him to be able to show that administrative remedies were not available. Is that right? Well, Your Honor, I mean, I think he could. It would be a reading of that term available. So I think, you know, we would follow this Court's decision in Roth, which I think is largely common ground here, that there are situations in which wouldn't necessarily be dispositive of that consideration. But, you know, he would have to show that they were in fact unavailable under the meaning of availability as this Court interpreted it in Roth and as we think is the common meaning of capable of use for a purpose here to obtain relief from the order. What do you understand your friend on the other side to mean by a removal order being void ab initio? So, Your Honor, I think what my friend on the other side means by that is that one of two things, essentially, either it was entered without jurisdiction or it was a legal nullity at the moment that it was entered. And I think both of those are incorrect. As a textual matter and as a matter of the immigration statute, the immigration judge plainly had jurisdiction here. That is to enter a removal order is precisely what immigration attempts that respondent makes to sort of say, well, you know, the immigration judge went beyond his statutory authority by entering this removal order. That fails, as this Court explained in City of Arlington, all limits on agencies are essentially provided by statute. And so this jurisdictional, non-jurisdictional distinction doesn't quite hold up. But, you know, I also think that this legal nullity idea doesn't work on respondent's argument, even in the situations that respondent points to, for example, where the Board of Immigration Appeals issues an order of removal in the first instance, and it doesn't have statutory authority to do that. Thank you, Counsel. Justice Thomas. Thank you, Mr. Chief Justice. Counsel, just so I'm clear, do you agree with the respondent that the underlying deportation order was wrong or substantively wrong? So we agree, Your Honor, that under this Court's decision in Leocal, of course, DUI is not an aggravated felony. But as I was just answering the Chief Justice, I think we disagree that that makes it a legal nullity that respondent was simply entitled to ignore. We think respondents still had to go through the regular channels to challenge his removal order. So, in effect, you're saying that if he were before the, and if he were considered now for deportation, he would not be deported based upon the DUI? In a fresh proceeding today, you know, putting to one side that respondent here obviously has an order of removal that has never been vacated. Yes, an individual who was convicted of DUI tomorrow and, you know, served with an immigration or a removal order the next day would not be removable under current law. That's correct. So if that's true, why would you be pursuing this case if you would say today he would not be deported? Your Honor, I think Congress reasonably determined in Section 1326B that, or in Section 1326, that someone who unlawfully reenters the United States despite an extant removal order that he never challenged has taken the law into his own hands and has shown a disrespect for the law and for the legal process that is subject to punishment. And to more serious punishment than simply an unlawful entry charge under Section 1325, which of course respondents concede would be appropriate here. On a separate matter with respect to the administrative remedies being unavailable, respondents suggest that, or indicate, argues that they were in effect unavailable to him. What do you think of that? We think that's incorrect, Your Honor. As I was mentioning to the Chief Justice, we think availability turns on whether the procedure is capable of use. And I think it plainly was here. We know that both as a matter of law and a matter of fact. As a matter of law, the statutory and regulatory procedures for challenging a removal order are well established. And as a matter of fact, individuals regularly bring these types of claims to the Board of Immigration Appeals, the Court of Appeals, and if necessary, this court. So for lack of a better way of expressing it, Mr. Palomar Santiago could have been Mr. Leocal had he chosen to exhaust his administrative remedies, which were available to him. Do you think that there are any constitutional concerns lurking in this case? I don't, Your Honor. I think this court was pretty clear in Mendoza-Lopez that the constitutional issue doesn't arise if someone had a prior opportunity for review. I think that's the holding of Yackas. And as Mendoza-Lopez noted, Yackas turned most significantly, in this court's words, on the prior opportunity for judicial Thank you. Justice Breyer? Is there, it seems to me, something anomalous in this situation. Mr. Smith has been in prison for years, exhausted every possible remedy. He's there because he violated Crime X, which later we say that the government had no power substantively to create that crime. And then he can go to habeas undertig, and he gets out. But here, where it seems like the same situation, the government had no power to make this a crime in this way. And Mr. Jones comes in, we put him in jail. Now, is there an anomaly in that? And I can't quite see how to work it out. I'd like to get your response. Certainly, Justice Breyer. So I don't think that there's an anomaly. And the reason why is because in the context that you've noted, the criminal conviction and then the subsequent habeas proceeding, that's an actual innocence claim. The problem here for Respondent, I think, is threefold. The first is that he's not actually innocent of a Section 1326 offense, as all nine justices of this court noted in Mendoza-Lopez. And as I think is equally true afterwards, an error-free removal order is not an element of Section 1326. Congress could have made it one, but it did not. Second, in the actual innocence context, the defendant there is using a procedure, a habeas proceeding, the point of which is potentially to undo his conviction. Respondent here concedes that, of course, the Section 1326 proceeding can't undo his prior removal order. It is aimed at a different matter, which is reentry. And the third issue is that even in the habeas context, where this court applies actual innocence, it is made clear that it does so based on habeas court's traditional equitable power, and that it wouldn't apply actual innocence if Congress had spoken clearly. Here, you have the inverse of both of those situations. There is no traditional equitable power to rewrite the terms of the statute. And Congress was, in fact, extremely clear in Section 1326D about when a challenge to a prior removal order may be brought. Thank you. Justice Alito? After Leocal, but before reentering the country, was there a procedure available to respondent to obtain relief from the removal order and reacquire the status he had prior to removal? Certainly, Your Honor. So I think that would be a motion to reopen. And it's a little bit complicated, but I think there's essentially three ways that respondent, at least before 2020, when there was a slight change in the regulations, could have obtained that type of relief. The first is a motion to reopen asking for equitable tolling, because presumably at that point, the 90-day statutory limit on the motion to reopen would have elapsed. The second is to join in a motion to reopen, which would excuse the time bar and would not require the government to actually agree on the merits, but would be a mechanism of getting the issue in front of the immigration judge or the Board of Immigration Appeals. And the third, and this is the one that changed in 2020, is to ask the immigration judge to rely on his sua sponte authority. And that, too, would make inapplicable the time bar. Now, in that situation, that's where the regulations changed in 2020, but they were replaced with a provision that would allow an individual to file one untimely motion to reopen when there is a case of a change in law, as well as due diligence on the part of the applicant. So for all of those reasons, I think respondents plainly could have sought that type of relief. I would also note that Section 1326A2A itself makes plain that the 1326 charge doesn't lie if an individual seeks and obtains the Attorney General's permission to reapply for admission. Now, it's possible in that case, depending on exactly when that happened, that respondent would have had to take some additional steps to lawfully enter. But it is certainly true that respondents had other mechanisms to seek relief, rather than, as I noted earlier, simply taking the law into his own hands and reentering despite an extant removal order that he had never challenged. So I assume in those circumstances, the alien would be considered to have exhausted administrative remedies, even though there wasn't an appeal to the BIA from the initial removal order. So candidly, Justice Alito, we haven't taken a position on that here. You know, I think what those separate procedures would do would allow him, if successful, to avoid the 1326 charge altogether. And I think to the extent that the motion to reopen was denied for some reason, in most circumstances, though candidly not with respect to the sua sponte reopening on the government's view, the individual would have judicial review of that denial of the motion to reopen. Thank you. Justice Sotomayor. You answered, Ms. Ross, Justice Thomas by saying that you don't see a constitutional issue here. But I do. You've given me a lot of potential to say this order reverse. But I don't know that there's a legal opportunity to do that, meaning it all depends on a whole series of discretion. In Lewis, we found it significant that a convicted felon may challenge the validity of a prior conviction before obtaining a fire warrant. That's basically your point here, that there is an opportunity to do that. But I'm not clear on this record before us if that's the case. So should we be relying just on your representation? Or is this one of the issues that hasn't been adequately addressed below that you, for that reason, you say we should not address respondents' constitutional arguments? So Justice Sotomayor, I think the primary reason not to address respondents' constitutional argument is simply that it's raised in the form of a constitutional avoidance argument. And the statute here is clear. But putting that to one side, I do think it's clear on this record that there was an opportunity for judicial review and for administrative exhaustion, at least in the sense that the Court of Appeals has only relied on a legal mistake with respect to the aggravated felony determination as its basis for holding, that respondent did not in fact have to exhaust. But counsel, the reality is that when this conviction happened, neither this circuit nor any court had yet ruled in his favor. And so to say that whether it's him or someone who did raise this before the agency and had taken it to judicial review and the circuit had said no, are all those people, if they can prove that they have no chance to void this administrative order because it was illegally entered, wouldn't they have a separate due process argument? Not a constitutional avoidance argument, but a separate due process argument. So Justice Sotomayor, as a first-line response, respondent obviously hasn't made that separate freestanding argument here. But second, I would point this court to its decision in Yakis. I think the court was very clear that no principle of law or provision of the Constitution precludes Congress from making criminal the violation of an administrative order by someone who has failed to avail himself of an adequate separate procedure for the adjudication of its validity. And I think that's precisely what respondent had here in the first instance. Now, I do think the court can take some comfort in the various methods for reopening and the ability to apply for the to apply for admission, excuse me, in the statute itself. But for the reasons I've said, I don't think there is a separate constitutional problem with effectively enforcing a forfeiture of or a waiver of available remedies. Justice Kagan? Ms. Ross, I'd like to talk about this word available and give you a hypothetical. Suppose that the immigration judge in this case had told the alien, you know, there just isn't an administrative procedure that you can take my ruling to. This is it. This is the end of the line. What would happen in that case? Would would this provision be satisfied? So Justice Kagan, I think that would be a much more difficult question than the one that we have here. Because of course, here, it's simply a legal error as to aggravated felony determination. I think there, you'd get very close to this court's third category in Ross, where the court talked about governmental actors thwarting review by misrepresentations. I think the key is that the misrepresentation, both that the court was thinking about there and in your hypothetical, goes to the procedure rather than to the substance of what's the right rule. Here, of course, the substance of whether this is or is not. So if I just understood you, you said it gets close to Ross. I mean, does it does it get in Ross? Is that a third, Ross's third category? Would that in fact be unavailable at that point? Your Honor, I think it's a little bit unclear because in the hypothetical that you're imagining, of course, this is a procedure that's plain on the face of the statute and the regulations. And so I think I hesitate a little bit before saying that, you know, a simple misstatement, an honest mistake by the immigration judge would get to the level of thwarting administrative review in the sense that I think this court had in mind in Ross. But, of course, I don't think this court needs to decide that question here because, again, there is no... Suppose that such a misrepresentation would make it unavailable. But instead, now let me switch to another hypothetical and say that the immigration judge doesn't say you have no place to take this, but instead the immigration judge says, and quite wrongly, your crime is a crime of violence and there is no way that you will receive any relief from anybody ever again. Your Honor, again, I think that would potentially fall into this bucket three. I think it's probably less likely there, honestly, than your prior hypothetical, just because, again, I think that goes to sort of the substance of what you're going to get rather than the procedure available for review. And I think particularly in an instance like this where we know from the statute and the regulations that review is, in fact, available, I would hesitate before assuming that it would be unavailable in that case. But you think that that's a pretty close case? I do, Your Honor. So how is that distinguishable from this case? Because in this case, there's just as much an error in the first, from the IJ. Now, it's true that the IJ thought, and in good faith, obviously, that he was faithfully applying precedent, but that precedent was overturned, and that meant that even when he was doing what he was doing, the law was not on the IJ's side. So how is that any different? So I think it's different, Justice Kagan, because I took your prior hypothetical to suggest that the Board of Immigration Appeals and a Court of Appeals and even this court would somehow be where the case law is simply not on the side of the individual. Of course, individuals challenge case law like that all the time. Mr. Leocal himself lost at the Board of Immigration Appeals and the Court of Appeals underbinding precedent. And so I think the way that the law handles this is to require individuals to bring their claims so that the law can be pushed forward and developed in exactly the way that it was by other individuals with respect to this issue. Thank you, Ms. Russ. Justice Gorsuch? Thank you. I have no questions at this point. Justice Kavanaugh? Thank you. I have no additional questions. Justice Barrett? I don't have any questions either. A minute to wrap up. Ms. Ross? Thank you, Mr. Chief Justice. I'd like to end where I began this morning. Section 1326B's text is clear and it resolves the question presented in this case. The immigration judge's determination that respondent's prior offense qualified as an aggravated felony does not demonstrate, as Congress required respondent to do, that he exhausted any available administrative remedies or that the removal proceedings improperly deprived him of the opportunity for judicial review. Respondent's contrary interpretation would create a significant loophole in the statute. It would effectively remove Section 1326D1 and 2 anytime a defendant argues that his prior removal order was substantively invalid. Respondent's attempt to limit his rule to undisputable invalidity cases is simply case-specific gerrymandering. The logic of his rule applies regardless of whether a court has already determined that a particular offense was not removable. This court should reject that argument and instead apply the plain text of the statute and we therefore ask that the court reverse. Thank you. Thank you, counsel. Mr. Garcia? Mr. Chief Justice, and may it please the court. This indictment was properly dismissed for two cannot proceed based on an invalid removal order. And this case can be resolved on the narrow ground that the invalidity of the order here is undisputed. This invalidity point flows not just from constitutional and background principles, but directly from the plain text of subsection D. That provision sets forth a way to, quote, challenge the validity of the deportation order, unquote. That language necessarily assumes that the order on which a section 1326 charge is based must be valid. Otherwise, satisfying subsection D's three requirements would have no effect. The order would be deemed invalid, but there would be no consequence. The government admits as much on page nine of its reply brief, explaining the invalidity of the order is a defense to the charge. And once it's clear that if the order is invalid, the charge cannot proceed, the proper result here is also clear. This order is before this proceeding ever began, and the government has never claimed otherwise. The government's only response to this argument is that subsection D requires any defendant who challenges the validity of a removal order to make the provisions three showings. But there is no need to challenge the validity of a removal order, whereas here it is already undisputed, the order is invalid. Instead, the order's undisputed invalidity requires dismissal without having to go through subsection D's three prongs. Second, even if those three prongs governed here, they are satisfied. Administrative remedies were not available because no ordinary non-citizen could understand and formulate the complex legal arguments required to challenge BIA precedent under the categorical approach. The government's contrary reading would not even cover the facts of Mendoza-Lopez or any case in the 25 years since this statute was amended. I welcome your questions. Counsel, what do you do with the language in Mendoza-Lopez? Quote, there was no congressional intent to sanction challenges to deportation orders in proceedings under 1326. So we are not disputing that rationale, Your Honor. Our argument is that the statute has now changed fundamentally when Congress added subsection D. And that's where I started today, which is when you look at the opening clause of subsection D, it doesn't, unless you read the statute to presume that when the order is invalid, the case can't proceed, then satisfying those three requirements will have no effect. So Congress inserted the concept of validity into this statute when it amended it by adding subsection D. And that's what I mean when I say that the government agrees that the actual defense here is invalidity of the order. When you look at the language of subsection D, there's no other way to describe what the defense is. Well, Counsel, there are a lot of areas where the door closes and you lose the right to go back and challenge prior determinations. You know, the felon in possession rules, some recidivist prosecutions. And I'm just wondering, the void ab initio, you seem to be arguing that whenever there is some kind of change or clarification in the law, you do go back and reopen everything. Now, as Counsel noted in response to Justice Alito's question, there are avenues in this case, this sort of case, to do that. But your proposition seems to me to be limited to, you know, we now know this was wrong, so we have to go and unscramble the eggs. Not exactly, Your Honor. I think it's important to keep in mind the context here, which is that the government is coming to court and looking to impose a new and further criminal punishment on the basis of an order that it knows is invalid. And in that situation, Your Honor mentioned the felon in possession situation. The Lewis case explained that that statute was extremely clear that Congress had no concern for the validity of the prior order. This statute is exactly the opposite. Congress added a defense that puts the validity of the order at issue. And I would say it is extremely anomalous, as Justice Breyer's question suggested, to impose further punishment based on an order like this. The government- Thank you, Counsel. Justice Thomas? Thank you, Mr. Chief Justice. Counsel, is it your argument that the administrative remedies are so complicated that they would always be unavailable? Our argument is that they're unavailable in this case, Your Honor, because of the extremely confusing, as Ross puts it, nature of the categorical approach and the fact that there was adverse BIA precedent on the books. And under subsection D, from this court's opinion in Ross and in Mendoza-Lopez, both of those opinions make clear that these requirements need to be read practically and here flexibly. And the fact is, I think the most important point about the it doesn't even capture the facts of Mendoza-Lopez. And the rule needs to be one that is particular to the context at issue. And the government's approach here ignores all of the practicalities. As our brief and the National Immigration Project briefs explain, the vast majority, approaching 90% of individuals in detention are unrepresented in these proceedings. And the suggestion that they could realistically formulate an argument of the type required in this case is entirely impractical. And just to be specific about that, the specific argument that supposedly was available was that, in fact, the crime of violence definition in section 16B should be read to have an implicit mens rea requirement. And thus, the DUI conviction was not a categorical match for that requirement. How would it have changed your case if a respondent had been represented at its deportation proceedings and had taken advantage of all the available appeals? So it's unclear in this case if Mr. Palomar Santiago was represented. And I think in interpreting the statute, the court should take account of the reality that the vast, vast majority of individuals facing charges like this are unrepresented. But your question also suggests an important point, which is that the government's position is exactly the same, even if Mr. Palomar Santiago had appealed and gone to the Ninth Circuit and lost. And that goes back to our first argument, Your Honor. And that argument is that it would be that Congress wanted to impose this particular criminal punishment when everybody agrees that the order was invalid. And that's both from the plain text, where I started, from the constitutional concerns. I think the government confirmed today that the only case they can point to is Yackas. And beyond being repeatedly questioned as likely limited to the in the PDR network case, that opinion on its face made clear that there was no argument in that case that the price regulation was invalid or void on its face. That is the extreme case we have here, Your Honor. Justice Breyer? How, in your opinion, at the risk of repetition, do you get out of this? The, the, uh, imagine a statute which is absolutely clear. It says, Mr. Jones, you're about to be deported and you will be under these circumstances. If the judge looks at your state record, he looks at that document. And if it says in that document, you were convicted of DUI and you can attack that conviction if it is entered within the last 10 years. But earlier than that, it's sacrosanct. I mean, can't the government deport somebody? All he had to do was look at the record. If it's there, we don't care if it's good, bad, indifferent, or whatever it is. We don't want to go back into it. You're now deportable. Well, that's what they've done here with an exception that favors you. How do we get out of that? Well, I think it's common ground, Your Honor, that Mr. Palomar Santiago was unlawfully deported. That would be true. That would be true if, exactly the same, he really wasn't driving under the influence 35 years ago. Our focus, Your Honor, is on the fact that regardless of the DUI conviction, everyone agrees that that is not and never was a basis to remove a lawful permanent resident from the United States. So this order is substantively invalid. I see where you're going. I see where you're going. Now, I have another question. I have another question. Sorry, I'm adding to your answer, but I see where you're going. All right. If you lose, I've tried to find out how many people are there likely that would be subject to orders based on crimes of violence or whatever that term is in your client's position, and I get under 1,000, and there must be a very small percentage of those, maybe one, maybe two, maybe three, people like your client who fall within the category of later on it was determined it wasn't a crime of violence like driving under the influence. So does your case affect more than a handful of people? And if it does, not. Does the Attorney General or is there a route that you could get relief, administrative relief, because your client has lived here such a long time? So, Your Honor, it is certainly not a particularly broad rule, especially as to the category that we are relying on today where it's made absolutely clear by a prior decision that the out of this. I think that's a question for the government. I do need to address the representation from the government that a motion to reopen was available to Mr. Palomar Santiago after Leocal because that is incorrect. A motion to reopen was barred by BIA regulation, and the government would have opposed a motion to reopen on that basis and the basis that it was time barred. And I think that's the reason that never before in this case have they actually argued that a available remedy. Justice Alito? Suppose that Leocal and the Ninth Circuit decision, Trinidad Aquino, had not been decided, but everything else about this case is the same. Could your client have moved to dismiss the invalid for the reasons that would later be accepted in Leocal and the Ninth Circuit decision? So, Your Honor, we think that there are arguments that would still be permitted, and that would essentially be the argument that that type of order is void ab initio, and so no challenge is required. But I recognize that that poses more of an obstacle in terms of the limitation on this defense, which is that you can't challenge the validity of the order in the criminal case. I think it's a far easier case when you have a decision like this, where Leocal establishes before the government files the indictment, before the case ever starts, that the removal order is invalid, and that is a defense to the Section 1326 charge. Well, I don't really understand why it is different under the arguments that you're making. In both situations, the individual would have been illegally removed. That's true, Your Honor, but we think it's particularly clear that there's no need for a challenge to the validity of this order in the criminal case when the other side is not even disagreeing. When everyone agrees it's already invalid and Leocal establishes it, there's no need for a further challenge. This is all about the text of that opening clause of Subsection D, and that's why, again, our fundamental point about the text is that the government has never explained how or why, even in a case where you satisfy Subsection D's requirements, the charge is dismissed. The answer is that the necessary premise of this statute, you have to read it as if Subsection D begins with the words, a charge cannot be based on an invalid order. Then there's a limit on that defense. Well, what it says is, in a criminal proceeding under this section, an alien may not challenge the validity of the deportation order, and then it provides some exceptions. You are challenging the validity of the deportation order. You think it's open and shut, and it probably is open and shut, but nevertheless, you're challenging it, are you not? No, Your Honor, I don't think so. We're absolutely challenging the indictment. Do you accept the validity of the deportation order? Well, no, but we don't need to challenge it in the criminal prosecution because it's already undisputed. It's established by Leocal, and even in a colloquial sense, if you would view that as challenging, I think it's actually more accurately, we're challenging the government's use of the order, but we don't need a further challenge to the validity when it's already conceded. My time is up. Thank you. Justice Sotomayor? Counsel, can you go on? You disputed Ms. Ross's argument about a motion to reopen, and I do know that there's a time limit there, but she mentioned other ways of you attacking or getting this revoked. I don't see that issue in the briefs before us or in the briefs or adequately spelled out for us to really consider that issue fully, but I think the essence of Lewis and other cases that rely on prior convictions, even if they're void or voidable, is that there is a way that a person can challenge that prior conviction, independent of committing the crime that says, don't possess a gun. You, if you're a convicted felon, and if you think the felony is void or voidable, you should go back and get it voided. And Ms. Ross's argument is, don't reenter the country until you get your removal order voided. So please answer the first question. Do you dispute that all the other mechanisms are unavailable to you, and where in the record do I look at that being resolved by the court below? So two answers, Your Honor. First, as to all of the other avenues that Ms. Ross referenced, we don't think any of those are realistic in any way, but I certainly agree that that hasn't been adequately ventilated in the courts below. And to the extent that there is a concern about the constitutional issue, we'd of course be happy to address that in more detail. But second, as to Lewis, Your Honor, it's extremely important to remember that that is a case about using a prior judicial order, a judicial conviction, not an administrative order. And using an administrative order in this context raises exactly the concerns that Justice Jackson and Justice Frankfurter and Specter thought were unconstitutional, which is to take the result of an administrative proceeding in which none of the constitutional protections for criminal defendants are provided, and to turn around and use that to impose criminal penalties. And I just go back to the government's invocation of Yakis. Not only has that been repeatedly questioned as being limited to wartime, but even that case says there was no argument there, the order was void on its face. I think the fact that the government can only point to Yakis is itself maybe our best proof that there is a grievous and substantial constitutional question in this case. And when you turn to the language of subsection D and ask, is this language actually clear that Congress intended to impose this punishment when everyone agrees that the removal order is invalid without any further analysis? We think the answer to that has to be no. Congress cared about the validity of the order, and there's no reason, given all of the other considerations, to treat what we're doing here as challenging the validity of the order when its invalidity is already established and conceded. Thank you. Justice Kagan? Mr. Garcia, assuming we are in Section 1326D and the question is one of availability, I had understood your brief to be making the argument that this is essentially a misrepresentation case, as described in Ross, so that even if there was an administrative remedy on the books, it wasn't truly available. But as you talked about it today, it strikes me that you're not talking about any kind of misrepresentation, that you're instead talking about what Ross's second category is, which is that the administrative scheme is so opaque that it becomes incapable of use. Am I reading you right now? Your Honor, I think it's most accurate to say that we think it's a combination of the two. Plainly, there was a misrepresentation, willful or not, and that combines with the fact that this area, the categorical approach, is already so opaque, as the Court put it in Ross, so confusing, no reasonable prisoner here, non-citizen, can use them. And so we're not saying it's exactly like Ross, but in the circumstances here, the combination of all of those factors certainly renders this appeal unavailable in the circumstances of this case. Well, Ross was talking about misrepresentations as to what kind of procedure was available. And similarly, in terms of what's opaque and what's not, Ross was talking about procedural schemes that are opaque. And you're sort of taking both of those and converting it into a context where we're talking about substantive law. And I'm wondering whether that's an appropriate thing to do. Yes, Your Honor. So I think in this context, substance absolutely blends with the process. And the reason is that both Ross and Mendoza-Lopez talk about meaningful access to the procedure at issue, and whether it can be used for the accomplishment of a purpose. Simply being able to file a notice of appeal, especially when there's BIA precedent for closing the claim, is not meaningful access to an appeal. And it's also important to recognize that this issue just doesn't arise under the PLRA. The claim in Ross, for example, was an excessive force claim. Of course, any ordinary prisoner can develop the facts to develop that type of argument. Here, it's an adversary proceeding against a non-citizen in an area where everybody concedes that the legal doctrines are mystifying and opaque. And to suggest that the substance is not relevant in any way, I think is just incorrect, especially when Mendoza-Lopez and Ross both tell us to approach these questions practically speaking. Thank you, Mr. Garcia. Justice Gorsuch. Thank you. My questions have already been covered. Justice Kavanaugh. I have no additional questions. Justice Barrett. Mr. Garcia, I'd like to go back to the colloquy you were just having with Justice Kagan. So I take you to be saying that, and I think everybody, I was about to say in this room, but on this call, can sympathize with your point that the categorical approach can be opaque and confusing. But does that then mean that availability under 1326D varies according to the difficulty of the law that underlay the initial conviction? Yes, Your Honor. I think that this statute necessarily calls for a case-by-case determination, but I also think that it's reasonable to say that in a case where you have to raise a categorical approach argument to overcome BIA precedent, that an appeal is not realistically available. And the government has, likes the refrain of pointing out that some non-citizens have appealed in similar cases. And it's important to point out that the administrative records are generally not public, but every case they cite in their brief and in LEOCAL, at least at the appellate level, those individuals were represented. As the National Immigration Project points out, 88% of individuals before the BIA are represented. They're by definition not the ordinary non-citizen. And the question for availability looks to whether the ordinary non-citizen could appeal in circumstances like this. And we don't think it's meaningfully available in the way that we want. Can you give me an example of when it would be? Absolutely, Your Honor. Even within the context of aggravated felonies, many of the aggravated felonies are enumerated federal crimes. If the immigration judge says you were convicted of a firearms offense under X statute, absolutely any ordinary non-citizen should be able to say yes or no to that. But when you're in this opaque and confusing area, and on top of that, that IJ backed by BIA precedent is misrepresenting the law to you, I don't think it is a practical and reasonable approach to this statute to say that an appeal was available to an ordinary non-citizen. Thank you. A minute to wrap up, Mr. Garcia. Thank you, Mr. Chief Justice. I do want to emphasize again, the narrowness of the rule we are proposing, which is at least in a case where it is undisputed that the order is already invalid, that no further challenge to the order is required in the criminal case. That may be a narrow rule, but this is the case the government asked the court to review, and it's the most extreme possible. And that affects the textual analysis. For the reasons I've said, there's no reason for a challenge. And it affects the constitutional analysis. As I said, even Yackas, their only case was careful to note that there was no argument like this in that case. And in light of all of those considerations, when you turn to the text in subsection D and ask, is this statute actually clear that Congress truly wanted a charge for this particular crime to proceed when everyone agrees the prior order is invalid? We submit the answer has to be no. Thank you. Thank you, Counsel. Rebuttal, Ms. Ross. Thank you, Mr. Chief Justice. If I could just make three points. The first is that Respondent's lead argument today, his invalidity argument, is entirely circular. Of course, he's challenging the validity of his prior removal order by claiming that it is in fact invalid. Indeed, Respondent acknowledged that at every prior stage of the proceedings before the Red Brief. And that's because in plain English, what Respondent seeks to do is challenge the validity of his prior removal order. His argument also puts the cart before the horse. It's impossible to know whether he's challenging the validity of a removal order until you determine whether that removal order was, on his view, valid. As my friend's comments to Justice Alito indicate, his theory, I think, is much broader than he suggests. Because his whole legal theory is that the law has always meant the same thing. But if that's true, of course, you would have to engage in the analysis regardless of whether a court had already invalidated or held that a particular crime doesn't qualify as an aggravated felony. On the second argument that Respondent made today, the availability point, I think it's key that there, too, the argument is nowhere as narrow as Respondent suggests. Because his view is that because the administrative scheme is opaque, as he responded to Justice Kagan, an alien or noncitizen in his position could never seek review. And therefore, it drives just a huge hole in Section 1326D, where I think Congress was very clear with respect to when it wanted collateral challenges to proceed. Third, with respect to fairness and constitutionality, our only case is not Yakis. I would say our case is Mendoza-Lopez, which held, of course, that there is a constitutional problem if an individual had no prior opportunity for judicial review. And Congress responded to that not by creating validity as an element of the offense, as Respondent claims, but instead by creating a narrow affirmative defense in which Respondent must meet D1, 2, and 3. His primary argument, of course, today attempts to just avoid meeting D1 and 2 entirely. We think the solution that this court adopted in Mendoza-Lopez and Congress then codified in Section 1326D to the potential constitutional problem itself cannot be unconstitutional. On top of what's constitutionally required by Mendoza-Lopez and what Congress provided in Section 1326D, we've talked this morning about a number of other methods for obtaining relief and avoiding an unlawful reentry charge. I agree that those are not aimed necessarily at the due issue, but I think they provide above and beyond what this court required in Mendoza-Lopez. And as I've already explained this morning, I think Respondent is incorrect with respect to the time bar. There are a variety of ways in which that could have been avoided. At bottom, I think this is a case about the rule of law. Respondent had a variety of options, both at the time of the initial proceeding and subsequently, to challenge his removal order. Congress reasonably determined that he couldn't take the law into his own hands. Thank you. Thank you, Counsel. The case is submitted.